Day, J.
The proceeding is upon an information in the nature of a quo warranto, by the state, on the relation of the attorney-general, against’the Farmer’s College of Hamilton county. The defendant is a corporation created by the state. The object of the proceeding is to forfeit, or to recover back to the state, the franchise of the defendant to be a corporation. The grounds upon which this is claimed are the non-user and mis-user of its corporate powers.
It is well settled to be a tacit condition of a grant of incorporation, that the grantees shall act up to the end or design for which they were incorporated; and hence, through neglect or abuse of its franchises, a corporation may forfeit its charter as for condition broken, or for breach of trust. A. & A. on Corp., § 774.
Courts, however, proceed with extreme caution in proceedings which have for their object the forfeiture of corporate franchises, and such forfeitures are not to be allowed, except under express limitation of the charter, or for a plain abuse of power, by which the corporation fails 'to ■fulfill the design and purpose of its organization. State v. Commercial Bank, 10 Ohio, 535.
Keeping in view these controlling principles of the case, -we must, then, first look to the charter of the corporation to find the object of its creation; and then examine the evidence to see if it has in fact complied with the conditions or purpose of its creation.
The corporation was created by a special act of the general assembly, passed February 23, 1846 (44 Ohio L. L. 163). Section 5 of the act declares that “ the object of the association shall be to direct and cultivate the minds of the students in a thorough and scientific course of studies, particularly adapted to agricultural pursuits;” and section 9 authorizes the trustees of the association, “ with the approbation of the instructor’,” to establish a course of studies, *490 and to issue “ certificates or diplomas, under the corporate seal, to such students as they may deem worthy of such honor.”
It would seem, then, that the original object of the institution was not so much to train students in the art of practical farming as it was to cultivate their minds by a thorough course of studies, scientific and otherwise, particularly adapted to agriculture. It would be difficult to fix the proper limits of such a. course of mental culture, short of an ordinary collegiate course; for the studies of a full collegiate course are either adapted, to some extent, to agricultural pursuits, or are aids to tire pursuit of those which are so adapted. Even the study of the classic languages could not be ignored as useless, for a knowdedge of those languages is an aid to an understanding of the terms employed in the sciences which are directly applicable to agricultural pursuits.
That the powers of the corporation might be ample to meet either the full design of its original creation, or to modify and enlarge its purposes, the general assembly, at its next session (45 Ohio L. L. 67), passed an act, which provided as follows :
“ That the trustees of the Farmers’ College, Hamilton county, be, and they are hereby, authorized and empowered to establish such number of professorships, in connection with said institution, one of which shall be a professor of agriculture, as they may, from time to time, deem conducive to the interests and welfare of the institution.”
The act further provided for the raisiug of funds, by scholarships, “ to aid in creating a professorship of agriculture in said college, or any other professorship to be created in connection with said institution.”
It is apparent, from these two acts of the legislature, that the object sought by the creation of. the corporation, was the education of students, to be more or less special or liberal, as in the judgment of the trustees would be most conducive to the welfare of the institution, and that there *491 should ever be connected with the institution, as a specialty, a professorship for the promotion of scientific agriculture.
An endowment fund w7as raised, and the corporation became the owner of an existing popular private educational institution, from which 'the incorporated enterprise originated. A liberal course of classical, mathematical, and scientific studies was prescribed, and the institution was so well managed that over three hundred pupils were enrolled on the annual catalogue of 1853.
About this time an additional fund was raised, by means of which an experimental farm wras added to the grounds of the institution, to afford facilities for instruction in practical as well as scientific agriculture and horticulture. A special course was adopted for the farm department; but this course, like the other courses prescribed, was an optional one.
The institution flourished for a number of years, but for want of sufficient funds and other causes, at length began to decline. In this condition of its affairs, the general assembly passed an act, April 5, 1866 (63 Ohio L. 211), authorizing the sale of the farm, with the extensive college improvements thereon, for the purpose, as expressed in the act, to support and maintain the college. The farm w7as sold and a large endowment fund was realized thereby, so that the college now has over $60,000 as a permanent fund, from which it derived an annual income of about $4,000.
After the sale of the farm, the main college edifice, with about seven acres of ground, part of the chemical and philosophical apparatus, and the college and society libraries remained; and the school was continued, to the best ability of those controlling the institution.
Unfortunately for the prosperity of the institution, a division of sentiment arose among the stockholders, as to whether the institution should be continued, or the affairs of the corporation be closed and the assets distributed among the stockholders.
At the election of directors or trustees, in 1870, two boards *492 were elected, and the board opposed to the continuance of the college obtained possession, and the school was closed.
After a litigation during three years, this board was ousted by legal proceedings, and the friends of the college obtained possession and control of the institution. Some vacillation as to the course to be pursued intervened, but the school was soon opened again, and continued to the present time. It now has an attendance of about seventy pupils, distributed through the various classes of the institution.
The trustees continue a preparatory course of studies, and a classical and scientific course, together with a special course with reference to agriculture, as in the more prosperous days of the institution. They have inaugurated a full faculty, consisting of a president, professors, and teachers, so that each department is supplied with competent instructors ; and the income of the corporation is expended to the best advantage for the welfare of the institution. The object of its creation is being promoted, to the extent of the available means of the institution, to the utmost ability of those having its control, and the institution is still accomplishing, as it has done in the past, much to promote the end of its creation. The ideal design of its originator never has been, and probably never can be, fully realized ; but the legislative intent, as manifested by the laws creating and controlling it, has been fulfilled according to the best ability of the managers of the corporation. They have never abused their powers, nor have they ceased to use them, except when interrupted by the enemies of the institution. Even then they used their powers, in the only way they could, in efforts to recover the control of the institution, for its preservation and use in accordance with its charter.
Females are now received as pupils in the institution, and this is claimed to be contrary to the purpose for which it was created. If this be an abuse of its powers, the corporation may, in a proceeding for that purpose, be ousted from that abuse, without destroying its existence; but, in *493 this proceeding, it is sought to forfeit all the powers of the corporation. We do not think this is such an abuse of power as must necessarily have that effect. It does not interfere with the general purpose for which the' corporation was created.
It is claimed that by reason of the sale of the experimental farm and its appurtenances the professorship of agriculture has ceased to be of any utility, and that, as that was a leading object of the creation of the institution, it has become impossible to fulfill its design. But the sale of the farm was by legislative authority, and the sale was authorized for the reason, as expressed in the act authorizing the sale, that the institution might “ be continued in usefulness as an institution of learning.” Whatever, therefore, was lost to the agricultural specialty of the institution by the sale, can not now be complained of by the state, so long as the fundamental idea of the institution remains.
Moreover, the act evinces a legislative purpose to preserve the college as “ an institution of learning,” even though the agricultural department should be greatly curtailed by the sale of the farm.
The state, then, has no good ground to complain of the corporation for a non-user ór mis-user of its powers, so long as it keeps up and sustains, to the extent of its ability, “ an institution of learning,” with a professor of agriculture, and the substantial object of its creation as such institution is thereby being accomplished. A. & A. on Corp., § 776.
It is true that the agricultural department, as a specialty, has dwindled to nominal proportions. But this does not seem to have been the fault of the managers of the corporation. They keep the “ professorship of agriculture ” filled by a competent professor, as they are required to do by the act of 1847. The.demand for special instruction in respect to agricultural pursuits does not meet the expectations of the founders of the institution. But this does not appear to have been the only, nor, indeed, the chief, object had in view by the legislature in regard to this corpo *494 ration. The fundamental object was “ au institution of learning.”
The state is here claiming a forfeiture of tbe corporation. Its charter contains no express limitations of forfeiture. It must, then, show a plain mis-user or non-user of its corporate powers. The testimony is voluminous, and can not be given here in detail. It must suffice to say that it fails to show an abuse or non-use of the corporate powers. Nor does it show an inability to accomplish in a fair degree the great object for which the corporation was created. On the contrary, it appears that the institution is not a total failure, and, except as prevented by unavoidable circumstances, that the trustees of the corporation have faithfully executed its powers. They are still continuing to do so, and the institution is recovering from its adversities. Though it may never fill the measure of the hopes of its founders, it is doing much in that direction. At all events, its “ usefulness as an institution of learning” has not been impaired by the abuse or non-use of the powers of the corporation.
It follows that the issues joined by the pleadings, which raise the questions of the use or abuse of the powers of the corporation, must be found in favor of the defendant, and that the proceeding must therefore be dismissed.

Judgment for defendant.